# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>vs.<br><br>SERGIO CABALLERO,<br><br>　　　　Defendant. | CASE NO. 15cr2738-BEN<br><br>ORDER DENYING<br>MOTION TO SUPPRESS |

Now before the Court is Defendant's motion to suppress evidence. Defendant seeks to suppress statements made and cell phone evidence discovered during questioning. The motion is denied.

## I. Background

According to the Complaint, Defendant drove his automobile from Mexico to the United States Port of Entry in Calexico, California. He was the sole occupant of the automobile. At the Port of Entry, United States Customs and Border Protection officers decided to search the automobile and discovered fifteen kilograms of methamphetamine and one kilogram of heroine inside the gasoline tank. Defendant was arrested. Several hours later Defendant was questioned while his cell phone was being manually searched.

Defendant has now provided a sworn declaration in support of his motion.[1][2] Defendant states that during his post-arrest questioning, one of the officers manually searched his cell phone and discovered a photograph of a large sum of money. He now seeks to suppress that photographic evidence and the officer's observation. He argues that it should be suppressed under the exclusionary rule as the fruit of an illegal search, based on *Riley v. California*, 134 S. Ct. 2473, 2485 (2014). The Government remonstrates that *Riley* has no application and that the search was permissible under the long-standing border search doctrine described in *United States v. Flores-Montano*, (541 U.S. 149, 152 (2004)).

The Court finds that it is bound by Ninth Circuit authority on the border search doctrine which permits law enforcement at the international border to perform a cursory search of a digital device upon something less than reasonable suspicion without violating the Fourth Amendment. *United States v. Cotterman*, 709 F.3d 952, 956-57 (9th Cir. 2013) (*en banc*), *cert. denied*, 134 S. Ct. 899 (2014) (analyzing search of laptop computer brought to a port of entry). While applying the *Riley* warrant requirement specifically for a cell phone search after an arrest at

---

[1] Southern District of California Local Rule 47.1(g)(1) requires a declaration. "Criminal motions requiring a predicate factual finding must be supported by declaration(s) . . . . The court need not grant an evidentiary hearing where either party fails to properly support its motion of opposition."
A trial court has discretion to deny a motion to suppress without an evidentiary hearing if a defendant fails to support the motion with specific facts. *United States v. Wardlow,* 951 F.2d 1115, 1116 (9th Cir. 1991) (affirming district court's denial of evidentiary hearing because requirements of Central District Local Rule 9.2 not met by declaration of counsel containing broad assertion that the statement of facts in a memorandum of points and authorities was based on discovery received by counsel); *United States v. Batiste,* 868 F.2d 1089, 1092 & n.5 (9th Cir. 1989).

[2] Also provided is a video recording of the Defendant's questioning in custody, and a partial translation of the Spanish language used during the questioning. The questions and answers are in Spanish and the video lasts approximately one hour. Defendant provides an English translation for 37 seconds of questioning. The 37 seconds of transcribed and translated questioning takes place midway through the interrogation. The Government provides a translation for the entire interrogation. The video picture is difficult to see. Much of the time, the Defendant is "off camera." At times, it appears that one of the officers is holding a dark object in his hand; the object could be a cell phone.

the border would seem to be a close question, this Court is bound by *Cotterman*'s approval of warrantless searches. *See Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003) (*en banc*). Therefore, the motion to suppress is denied.

## II. Discussion

### A. Cell Phone Search Evidence

International travelers carry in their hands, pockets, handbags, and backpacks: laptop computers, iPhones, iPads, tablets, phablets, flip phones, smart phones, contract phones, no-contract phones, and digital cameras. These devices often contain private and sensitive data and photographs. *Cotterman*, 709 F.3d at 956-57. Particularly for cell phones, *Riley* announced that arresting officers must generally obtain a search warrant before conducting a search. 134 S. Ct. at 2485.[3] Fair enough. But, does *Riley* apply to a border arrest and search?

#### *1. Standing*

Before deciding whether *Riley* applies to this search, the issue of Defendant's standing needs to be addressed. Standing is required before a court will consider whether evidence found during a search will be suppressed at trial. *United States v. Padilla*, 111 F.3d 685, 688 (9th Cir. 1997) ("We do not hold that members of a

---

[3] *Riley* retains the exception to the warrant requirement for exigent circumstances. *United States v. Camou*, 773 F.3d 932, 940 (9th Cir. 2014) (recognizing *Riley* permits warrantless search of cell phone where exigent circumstances exist). When drug smugglers cross the border at a port of entry, they often use "scout vehicles" in addition to the "load vehicles" and cell phones to coordinate meeting places and interior drop off locations. *See, e.g., United States v. Villasenor*, 608 F.3d 467, 469-70 (9th Cir. 2010) ("ICE Agent Chad Worgen interview[ed] a person caught smuggling drugs through the Calexico West Port of Entry in Southern California. During their conversation, the smuggler admitted to being involved in a larger drug trafficking organization. He told the agents that in the near future he was to meet up with a white Toyota Tacoma, which would serve as a "load vehicle," and a white PT Cruiser, which would serve as a "scout vehicle." He was supposed to meet the cars on the California side of the border at either PepBoys or McDonald's, at which point he would be led to a separate drop-off location. The smuggler did more than just talk: he showed the agents a picture of the PT Cruiser on his cell phone. . . .").
  In that context, it would be good police work for an officer to look through a drug smuggler's cell phone during a border arrest to determine if there is evidence of co-conspirators approaching the border, or waiting nearby, or attempting to communicate with the arrestee. Such a search may well qualify under the exigent circumstances exception even after *Riley*. However, the Government does not make that argument here.

conspiracy can never have standing to contest a search of items or places related to the conspiracy. However, conspirators must show that they personally have 'a property interest protected by the Fourth Amendment that was interfered with . . . , or a reasonable expectation of privacy that was invaded by the search.'") (citation omitted). The Government argues that Caballero has not shown he has standing to contest the cell phone search. However, his declaration presents enough facts to demonstrate standing. Specifically, in his declaration, Caballero says that at the time of the arrest he possessed a black LG cell phone, that he used the cell phone, and that the phone was given to him by an ex-girlfriend. He did not consent to the search of that cell phone. This comports with the interrogation transcript[4] and the

---

[4] During the questioning, there are two instances where phones are discussed. First, there are questions about a number of phones, one or more of which the Defendant says do not belong to him:

| | |
|---|---|
| Officer: | Yes, and these photos? |
| Def: | Which ones? |
| Officer: | Do you take money into Mexico? |
| Def: | No. |
| Officer: | That's your phone. |
| Def: | That's my phone. |
| Officer: | Where did you take that photo? |
| Def: | But that phone's not in my name. I use it. But the other one is in my name. |
| Officer: | Oh, [expletive], man. |
| Def: | I just use the phone. |
| Officer: | Hey, look, do you think we're stupid or what? |
| Def: | No, sir. |
| Officer: | So then? |
| Def: | I'm not saying you're stupid or anything. Those two are my phones. Those two are. |
| Officer; | Ah, and this one? Oh, what about that one? Did you find it? |
| Def: | Those two are in my name. |
| Officer: | And this phone? What's the deal with this phone? |
| Def: | Ah, somebody gave me that phone. |
| Officer: | Who? |
| Def: | A person. |
| Officer: | Uh huh, a person. |

[Transcript, 39:12 to 40:13.]

The second exchange takes place about a phone given to the Defendant by a girlfriend. From the video, it is unclear whether the Defendant is referring to the same phone that holds the photograph or another phone:

- 4 -

officer's arrest report and is sufficient for standing. *United States v. Lopez-Cruz*, 730 F.3d 803, 808 (9th Cir. 2013) (standing exists where defendant has possession of phone, uses the phone, has right to exclude others from using the phone, did not abandon or attempt to dispose of the phone, and legitimately possessed the phone).

### *2. A Cell Phone Search at the Border*

The interrogation transcript along with the declaration makes clear that agents conducted a cursory search of Defendant's cell phone and discovered the photo. There is no evidence that the agents did an extensive forensic search or transported the phone away from the border for computerized searching.

#### a. The intersection of *Riley* and the Border Search Exception

The issue of whether such a search violates the Fourth Amendment stands at the intersection of two avenues of law. Heading in one direction is the Supreme Court's bright line rule in *Riley*: law enforcement officers must obtain a warrant to search a cell phone incident to an arrest. Heading on a different course is the border search exception. The border search exception describes an exception to general Fourth Amendment principles. It is the notion that the government may search without a warrant anyone and anything coming across its border to protect its national sovereignty. *Cotterman*, 709 F.3d at 960 ("The broad contours of the scope

---

```
Officer:    And this phone....
Def:        Those are the two that are in my name.
Officer:    Yes, and this phone is yours, but somebody gave it to you.
Def:        I had it on me.
Officer:    You had it on you?
Def:        Um hm.
Officer:    Okay.  And whose is it?
Def:        Whose is it?  I don't even remember.
Officer:    You don't remember or you don't want to say whose....?
Def:        It's a girl's.
Officer:    A girl's?
Def:        She was my girlfriend, she had the other one.  She got two.
Officer:    So, its your girl-, a girlfriend's, right?
Def:        Yes, she was my girlfriend.
Officer:    And what's your girlfriend's name?
Def:        Jennifer.
```
[Transcript, 46:15 to 47:7.]

of searches at our international borders are rooted in 'the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country.' Thus, border searches form 'a narrow exception to the Fourth Amendment prohibition against warrantless searches without probable cause.'") (citations omitted).

The question presented by this case is this: once a person is placed under arrest at the border, may officers conduct a cursory search of the arrestee's cell phone without a warrant? *Riley* says, "No." But, *Riley* does not address a search at the border. The border search exception says, "Yes." But, neither the Supreme Court, nor the Ninth Circuit, has decided a case involving the heightened privacy interests implicated by a cell phone search at the border after an arrest.

### b. Protecting the Government's special interests at the border

A decade before *Riley*, the Supreme Court reaffirmed the Government's historical right to search without a warrant people and property crossing the border into the United States. *Flores-Montano*, 541 U.S. at 152-53.[5] *Flores-Montano* explains,

> The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border. Time and again, we have stated that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." Congress, since the beginning of our Government, "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." The modern statute that authorized the search in this case, 19 U.S.C. § 1581(a), derived from a statute passed by the First Congress, the Act of Aug. 4, 1790, ch. 35, § 31, 1 Stat. 164, and reflects the "impressive historical pedigree" of the Government's

---

[5]*Flores-Montano* arose from a Southern District of California case.

> power and interest. It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.

*Id.* (citations omitted).

### c. *Cotterman*'s rules for border searches

*Cotterman* applied the border search doctrine to digital storage devices. In particular, a laptop computer. The decision offers several guideposts. To begin with, "border searches are generally deemed 'reasonable simply by virtue of the fact that they occur at the border.'" 709 F.3d at 960 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). "Individual privacy rights are not abandoned" at the border but are weighed against the interests of the sovereign. *Id.* (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 539 (1985)). "That balance 'is qualitatively different . . . than in the interior' and is 'struck much more favorably to the Government.'" *Id.* (quoting *Montoya de Hernandez*, 473 U.S. at 538, 540). "Nonetheless, the touchstone of the Fourth Amendment analysis remains reasonableness. The reasonableness of a search or seizure depends on the totality of the circumstances, including the scope and duration of the deprivation." *Id.* (citations omitted).

### d. *Cotterman*'s rules for digital devices

Applying these principles to a border search, the Ninth Circuit held (pre-*Riley*) that a manual (or cursory) search of a personal electronic device such as a laptop computer needs no warrant. *Cotterman*, 709 F.3d at 967-68. The court noted that it had previously approved – under the border search doctrine -- "a quick look and unintrusive search of laptops" without suspicion or a warrant. *Id.* at 960 (citing *United States v. Arnold*, 533 F.3d 1003, 1009 (9th Cir. 2008)). *Cotterman* did not change that. What *Cotterman* did change was the standard for conducting a deep, forensic search of a laptop at the border. *Cotterman* attempted to achieve the correct balance between: (a) the increased interests of the sovereign at the border;

- 7 -

(b) a traveler's diminished expectations of privacy in general at the border; and (c) the substantial personal privacy interests implicated by the broad amount of data contained in or accessible through a digital device.  "Notwithstanding a traveler's diminished expectation of privacy at the border, the search is still measured against the Fourth Amendment's reasonableness requirement, which considers the nature and scope of the search.  Significantly, the Supreme Court has recognized that the 'dignity and privacy interests of the person being searched' at the border will on occasion demand 'some level of suspicion in the case of highly intrusive searches of the person.'"  *Cotterman*, 709 F.3d at 963 (citing *Flores–Montano,* 541 U.S. at 152).

### e. Manual routine searches vs. deep forensic software searches

To justify a deep "forensic examination" (in contrast to a manual review of files) of a laptop computer at the border, *Cotterman* announced a new, higher threshold: officers may perform a warrantless search if they have reasonable particularized suspicion.  *Id*.

> International travelers certainly expect that their property will be searched at the border.  What they do not expect is that, absent some particularized suspicion, agents will mine every last piece of data on their devices or deprive them of their most personal property for days (or perhaps weeks or even months, depending on how long the search takes). . . . *We therefore hold that the forensic examination of Cotterman's computer required a showing of reasonable suspicion*, a modest requirement in light of the Fourth Amendment.

*Id.* (emphasis added).

### f. *Cotterman* permits the warrantless search in this case

The warrantless, cursory search of Defendant's cell phone in this case is clearly *permissible* under the border search doctrine enunciated by *Cotterman*.[6]

---

[6] "The fact that *Riley* involved a cellular telephone rather than a laptop is of little moment; indeed, it was the fact that a cellular telephone is, for all intents and purposes, a small computer, that led that Court to find that the usual rules governing a search

- 8 -

With the discovery of undeclared, illicit drugs hidden in Defendant's vehicle, law enforcement officers had plenty of evidence to meet the heightened standard: reasonable particularized suspicion of unlawful conduct. Officers certainly had reasonable suspicion to search the cell phones carried by Caballero after finding 15 kilograms of methamphetamine and one kilogram of heroin hidden in the gas tank of Caballero's automobile as he crossed the border.

There is no question that a cell phone search, limited as it was in this case, qualifies as a reasonable search at the international border when performed prior to an arrest. *Cotterman* dictates this much. Since the *Cotterman* decision is almost on all fours, it controls the outcome of this motion to dismiss. Reviewing the totality of the circumstances, the Caballero cell phone search: (1) took place at a port of entry; (2) was based on reasonable suspicion of criminal activity; (3) was conducted manually and appeared to be a cursory search of the device's contents; (4) did not involve the application of forensic software; (5) did not destroy the cell phone; (6) was performed in minutes, as opposed to hours or days; (7) was performed upon a device being brought into the country, rather than being taken out of the country; and (8) was performed approximately four hours after Caballero was placed under arrest. Other than the last factor, each of these factors was either similar to or less intrusive than the warrantless search *Cotterman* decided was reasonable. *Cotterman*, 709 F.3d at 960 ("In view of these principles, the legitimacy of the initial search of Cotterman's electronic devices at the border is not in doubt. Officer Alvarado turned on the devices and opened and viewed image files while the Cottermans waited to enter the country. It was, in principle, akin to the search in [*United States v.*] *Seljan,* [547 F.3d 993 (9th Cir. 2008)(en banc)] where we concluded that a suspicionless cursory scan of a package in international transit was not unreasonable."); *United States v. Arnold*, 533 F.3d 1003, 1008 (9th Cir. 2008)

---

incident to arrest should not apply." *United States v. Kim,* 103 F. Supp. 3d 32, n.14 (D.D.C. 2015).

("Therefore, we are satisfied that reasonable suspicion is not needed for customs officials to search a laptop or other personal electronic storage devices at the border.").

### g. The arrest makes this case different

What makes this case different is that there was no arrest before the laptop search in *Cotterman*. Cotterman was permitted to pass into the country. Only his laptops and a camera were detained and searched. In fact, Cotterman was able to flee to Australia two days later. Once an international traveler is placed under arrest at the border, the context changes. While, "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border" (*Flores-Montano*, 541 U.S. at 152), once unwanted drugs have been discovered and a person arrested, it can be said that the Government has achieved its goal of discovery. A "stopping and examining [of] persons and property crossing into this country" (*id.*), has already taken place. Illicit narcotics have been discovered.[7] Reasonable suspicion has jelled into probable cause. Any goal the Government might have of proceeding expeditiously to avoid delaying innocent travelers, evaporates.[8] There is no more need for agents to work expeditiously to return the digital device to the traveler so that he or she may be on their way. Agents may take their time to obtain a search warrant.

### h. If it could, this Court would apply *Riley*

If this Court were free to decide the question in the first instance, it would

---

[7] On the other hand, it could be argued that the Government's goal of discovering unwanted persons and effects is never finished. Criminals do not always engage in a single criminal activity. In this case, although agents had already discovered Caballero's hidden car load of illegal drugs, they might have searched his phone for any number of other possible crimes such as money laundering, alien smuggling, gun running, sex trafficking, etc. All of these are crimes commonly involving cross-border movements. However, nothing in the record before the Court clearly indicates what it was that the agents were looking for on Caballero's cell phone.

[8] The Supreme Court notes an absence of caselaw indicating that the Fourth Amendment shields entrants from inconvenience or delay at the international border and delays of one to two hours are to be expected. *Flores-Montano*, 541 U.S. at n. 3.

- 10 -

hold that the warrantless cell phone search under these circumstances would be unreasonable. *See e.g., United States v. Djibo*, __ F. Supp. 3d __, 2015 WL 9274916 *10 (E.D.N.Y. Dec. 16, 2015) ("In this case, the search was undertaken to find contraband or currency and neither were found. There was no need to then seek out Djibo's passcode. It had nothing to do with national security at the airport on that day. Based on the line of [the government agent's] questioning and Djibo's outbound status, this cannot be considered within the purview of a border search. That Djibo was arrestable based on the information obtained from the Cooperator is of no great moment. He could have been arrested, his phone seized pursuant to the border authority, and a search warrant obtained before any searching occurred. [The government agent] sought to sidestep these constitutional guarantees.") A warrantless search of a cell phone incident to an arrest in the interior of the country, is clearly a Fourth Amendment violation under *Riley*. After all, in an area where bright line rules are few, *Riley* paints a fairly bright line: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple – get a warrant." 134 S. Ct. at 2495. Requiring a search warrant after an arrest at the border would offer a consistently bright line.[9]

---

[9] Of course, applying *Riley* at the border may have unintended effects such as prompting an investigating officer to delay placing an individual under arrest. With the border search exception permitting a search pre-arrest, and *Riley*'s warrant requirement applying post-arrest, officers may postpone an arrest to undertake a manual cell phone search. *See e.g., United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) (finding no Fourth Amendment violation where international air traveler detained for at least 16 hours before being placed under arrest for alimentary canal drug smuggling).
  Applying *Riley* at the border may also have a diminishing impact in the future. Rather than carrying cell phones that "expose to the government far more than the most exhaustive search of a house" or may contain "many sensitive records previously found in the home," and "a broad array of private information never [before] found in a home in any form," future international travelers may use instead cheap, temporary phones with limited storage and little private information.
  Or perhaps, travelers will employ cell phones with more sophisticated encryption and passwords that will foil agents equipped with a search warrant – turning a Fourth Amendment issue into a Fifth Amendment issue. New apps such as "Telegram" provide fully encrypted and self-destroying text messaging. CBS News, "60 Minutes," *Encryption Cannot Be Secure Just for Some People*, (aired March 13, 2016). Had Caballero used the popular app, "Snapchat," to photograph the pile of money, this motion to suppress may have never been filed, since Snapchat photographs disappear

While the future may change the balance, at this point in history, a cell phone search threatens significant individual privacy interests. As the Ninth Circuit Court of Appeals has recently reiterated, these individual privacy interests in cell phone data are entitled to Fourth Amendment protection. "In sum, we conclude that [the defendant] had a privacy interest in his cell phone and the data it contained. That privacy interest was substantial in light of the broad amount of data contained in, or accessible through, his cell phone." *United States v. Lara*, __ F.3d __, 2016 WL 828100, *6 (9th Cir. Mar. 3, 2016) (finding privacy interest in cell phone data described in *Riley* outweighed probationer's Fourth Amendment waiver for his property). "Today's cell phones are unlike any of the container examples the Supreme Court has provided in the vehicle context. Whereas luggage, boxes, bags, clothing, lunch buckets, orange crates, wrapped packages, glove compartments, and locked trunks are capable of physically "holding another object, [m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014) (quoting *Riley*, 134 S. Ct. at 2488-89) (extending *Riley* to the vehicle search context because of the particular concern for privacy intrusion).

### i. But *Cotterman* and *Riley* are not "clearly irreconcilable"

Although *Riley* could be applied to a cell phone search at the border, this Court is bound by *Cotterman*. The Ninth Circuit has answered the "sometimes very difficult question" of when a district court may reexamine normally controlling circuit precedent in the face of an intervening Supreme Court case. *See Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003) (en banc). It adopted a "clearly irreconcilable" standard:

---

within ten seconds. The Atlantic, *What is Snapchat?* (Nov. 15, 2013), www.theatlantic.com/technology/archive/2013/11/what-is-snapchat/281551/ (last visited Mar. 28, 2016).

> We hold that in circumstances like those presented here, *where the reasoning or theory of our prior circuit authority is clearly irreconcilable* with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.

*Id.* at 893 (emphasis added).  In other words, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900.  Here, the reasoning and theory of *Cotterman* is not clearly irreconcilable with the reasoning and theory of *Riley*, as evidenced by a number of courts finding that *Riley* simply does not apply to cell phone searches at the border.

### j.  No court has found the decisions to be clearly irreconcilable

For example, in a recent decision from this Court (which neither party cites), another judge declined to suppress a cell phone search at the border reasoning that the *Riley* court gave no indication that it undercuts the border search exception. *United States v. Hernandez*, slip op., Case No. 15cr2613-GPC, 2016 WL 471943, n.2 (S.D. Cal. Feb. 8, 2016).  Another decision from this Court synthesized *Riley* and the border search doctrine and determined that if reasonable suspicion existed, that is all that is needed to justify the search of cell phones at a border. *United States v. Martinez*, slip op., Case No. 13cr3560WQH, 2014 WL 3671271, at *3-4 (S.D. Cal. July 22, 2014) (officers used "Cellebrite" technology at the border to collect phone numbers and text messages – an approach more intrusive than manually searching but less exhaustive than the computerized forensic examination of the laptop in *Cotterman*); *see also United States v. Blue*, Case No. 14cr244SJC, 2015 WL 1519159, at *2 (N.D. Ga. Apr. 1, 2015) ("[T]he search here falls within the well-established parameters of a border search requiring no warrant. *Riley v. California* . . . has no direct application to the circumstances presented here.");

*United States v. Saboonchi*, 48 F. Supp. 3d 815, 819-20 (D. Md. 2014) (holding that even after *Riley*, an "invasive and warrantless border search" of a cell phone may be justified by no more than reasonable suspicion); *c.f. United States v. Thompson*, 53 F. Supp. 3d 919, 923 (W.D. La. 2014) (post-*Riley* not even reasonable suspicion required to search a cell phone at the border).

### k. An obvious path to reconciliation: *Riley*'s exceptions

No court has held that *Riley* and *Cotterman* are clearly irreconcilable. *C.f. United States v. Feiten*, slip op., Case No. 15-20631, 2016 WL 894452 *5 (E.D. Mich. Mar. 9, 2016) (deciding *Riley* did not require warrant for search of laptop at international port of entry in light of historical border search exception for warrantless searches of persons and objects). The two cases can be reconciled. The most obvious path for reconciliation is to conclude that the border search exception is among the traditional exceptions to which *Riley*'s warrant requirement does not apply. This approach finds safe footing in the Supreme Court's statement that "other" "exceptions" may continue to justify a warrantless search. *Riley*, 134 S. Ct. at 2494 ("Moreover, even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone."). It also is consistent with the observation from *Montoya de Hernandez*, (473 U.S. at 539), about when balancing individual privacy rights against rights of the sovereign, the balance "is qualitatively different . . . than in the interior" and the balance is "struck much more favorably to the Government." This approach also avoids the spectacle of deeming that *Riley* undercut 200 years of border search doctrine without even a mention.

### l. For other approaches: tension or doubt is not enough

Two other approaches to reconciliation are possible, but would require a warrant where *Cotterman* does not. For example, unlike the laptop computer searched in *Cotterman*, one could say the cell phone is in a digital device class by itself. *Riley*, 134 S. Ct. at 2489, 2494 ("Cell phones differ in both a quantitative and

a qualitative sense from other objects that might be kept on an arrestee's person. . . .Modern cell phones are not just another technological convenience."). *Riley* notes that, "nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." *Id.* at 2490. That is likely not the case for laptop computer users. Classifying a cell phone as categorically separate from a laptop computer, however, creates some tension between *Riley* and *Cotterman*.

Another approach to reconciling the cases could focus on arrests as a class by itself. *Cotterman* discussed searches without regard to arrests, while *Riley* discussed only a search incident to an arrest. Prior to an arrest, law enforcement may have no suspicion or perhaps only "an inchoate and unparticularized suspicion or hunch" about criminal activity. *Cotterman*, 709 F.3d at 970 (quoting *Montoya de Hernandez*, 473 U.S. at 542). Through routine and limited warrantless searches, border agents look to uncover and accumulate evidence into reasonable suspicion and beyond. Once reasonable suspicion grows into probable cause, an arrest is made. The immediacy of an unfolding investigation may now slow and focus. The person arrested and his containers/devices will remain in the hands of the government. There is time to engage the machinery for obtaining a search warrant without jeopardizing the important government interests in preventing the entry of unwanted persons and effects at the border. *Flores-Montano*, 541 U.S. at 152. Here, illicit narcotics had been discovered. Caballero had been arrested. Reasonable suspicion had jelled into probable cause. For the time being, he and his cell phone were safely in the hands of government agents. Other than the increased administrative work required, there is no apparent reason why *Riley*'s search warrant requirement could not be applied without undercutting the interests supporting the border search doctrine. One can certainly say that *Riley* casts doubt on *Cotterman*'s approval of warrantless searches where an arrest is made.

Nevertheless, as long as this Court can apply circuit precedent without

- 15 -

running afoul of intervening authority, it must do so. *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013) (citing *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)) (affirming suppression of evidence despite government arguments that intervening authority undercut circuit precedent). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent." *Lair*, 697 F.3d at 1207 (citations omitted). In order for this Court to disregard *Cotterman*, *Riley* would need to be "'clearly inconsistent'" with the prior circuit precedent." *Id.* (citations omitted). "This is a 'high standard.'" *Id.* (citations omitted).

### m. Absent irreconcilability, *Cotterman* controls the outcome

Because the cases are not clearly irreconcilable, this Court is bound by the *en banc* decision in *Cotterman*, which requires neither warrant nor reasonable suspicion to justify a manual cursory search of a digital device being brought across an international border. Therefore, the motion to suppress is denied.

### 3. *The Exclusionary Rule's Good Faith Exception*

Even if this Court were free from binding precedent to find the search of Caballero's cell phone violative of the Fourth Amendment, it would not end the matter. That is because the good faith exception to the exclusionary rule would apply here. "The fact that a Fourth Amendment violation occurred – *i.e.*, that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009), *r'hng denied*, 129 S. Ct. 1692 (2009). "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Schesso*, 730 F.3d 1040, 1050-51 (9th Cir. 2013) (quoting *Herring*, 555 U.S. at 143). Here, a long string of Supreme Court decisions and Ninth Circuit decisions have reinforced the vitality of the border search exception generally.

These decisions – all pre-*Riley* – approved manual searches at the border without a warrant. There has been no binding authority applying *Riley* to government cell phone searches at the border. Quite the opposite, a number of decisions have held that *Riley* does not apply to cell phone searches at the border. When an officer undertakes an unconstitutional search in good faith, evidence will not be suppressed. *United States v. Leon*, 468 U.S. 897, 922 (1984).

At the time of this search, officers had binding appellant precedent upon which they reasonably and in good faith could have relied to manually search Defendant's cell phone. There was no binding precedent that extended *Riley*'s search-incident-to-arrest decision to the milieu of international border enforcement. Thus, the law enforcement officers in Caballero's case could not have known that a manual search of a cell phone post-arrest would run afoul of the Fourth Amendment. The "good faith" inquiry is "whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (quoting *United States v. Leon*, 468 U.S. 897, 922 & n.23 (1984)).

As discussed above, at least two district courts have found that *Riley* does not apply at the border. Assuming, without deciding, that *Riley* trumps the border search exception, it would be illogical to find that if two trained jurists did not find that *Riley* trumps the border search exception, that law enforcement officers should know otherwise.

Because a reasonably well-trained federal officer at our international border would not have known that searching Caballero's cell phones was illegal under the circumstances, the good faith exception would certainly apply. Because the good faith exception would apply, the exclusionary rule would not apply.[10]

---

[10]The Government also argues the inevitable discovery exception to the exclusionary rule because it later applied for a search warrant for the cell phone at issue. Because this Court finds no Fourth Amendment violation under existing binding precedent, it need not decide the question, although the Government's argument would likely be unsuccessful under the reasoning of *Camou*, (773 F.3d at 943-44) (denying

- 17 -

**B. Statements During Questioning**

In a separate argument, Defendant asserts that he was placed under arrest at 1725 hours. He asserts that his later *Miranda* waiver and statements were involuntary and should be suppressed. That contention is belied by the interrogation video.

It is noted that *Miranda* warnings were given and that Defendant indicated he understood his rights. [Transcript 9:5 to 12:16.] Considering the totality of the circumstances, there is nothing to indicate that Defendant's will was overborne. His *Miranda* waiver was voluntary and his statements were voluntary. He was neither physically nor psychologically coerced or threatened. He was not deprived of sleep or sustenance. The motion to suppress statements is denied.

### III. Conclusion

Defendant's motion to suppress is denied.

DATED: April 14, 2016

_____
Hon. Roger T. Benitez
United States District Judge

---

inevitable discovery exception based on later-requested search warrant).