UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>SERGIO CABALLERO,<br><br>                      Defendant. | Case No.: 3:15-cr-02738-BEN-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |

On the basis of "newly discovered evidence" which is neither newly discovered nor admissible evidence, Defendant moves under Rule 33 of the Federal Rules of Criminal Procedure for a new trial. The supposed evidence hardly merits a new trial. In fact, the substance of the putative evidence was of such dubious quality that counsel wisely did not try to offer it to the jury. Defendant's motion is denied.

On the day set for sentencing, Defendant filed his motion for new trial. A photocopy of a handwritten letter penned in Spanish is the basis for the motion. The letter is signed twice. First, supposedly by Roberto Diaz Flores. Second, supposedly by Rafael Arias Medina. Both names are apparently used by the same individual. The letter is not dated. It is not notarized. It is not signed under penalty of perjury. There is no indication of when it was written. There is no indication of how it came into being.

1

There is no indication as to whom it was delivered or when it was received. There is only counsel's assertion that it is a "newly discovered letter."

The letter is short. In essence, the letter says that the writer is the person who put packages in Defendant's car, that the writer was forced, and that the writer is guilty and should be put on trial instead of Defendant.

The same day, the Court appointed counsel for the supposed letter writer, Roberto Diaz Flores / Rafael Arias Medina, and continued the sentencing. Two weeks later, counsel for Roberto Diaz Flores / Rafael Arias Medina informed the Court that his client intended to invoke the Fifth Amendment. Counsel for Defendant agreed that calling him to testify would be unproductive. Appointed counsel for Roberto Diaz Flores / Rafael Arias Medina was discharged and the sentencing of Defendant was again continued. While the format of a handwritten letter may, or may not, be new, the information communicated by the letter was known by Defendant before trial and was the subject of a pre-trial hearing held at the instigation of Defendant.

## I. Background

On September 28, 2015, Defendant applied for entry into the United States at the Calexico, California Port of Entry. He was the sole occupant and driver of a 2007 Toyota Camry. During the secondary inspection, thirty-two packages were found concealed within Defendant's vehicle; two packages field-tested for heroin and thirty packages field-tested for methamphetamine.

Eight months later and just twelve days prior to trial, Defendant moved for a *writ of habeas corpus ad testificandum* for federal inmate Roberto Diaz-Flores, a/k/a. Rafael Arias-Medina (hereinafter "Diaz-Flores"). Defendant announced that inmate Diaz-Flores had "come forward with exculpatory information, namely that he is the person responsible for concealing drugs in Mr. Caballero's car without his knowledge." (Docket No. 45-1 at 1.) On June 1, 2016, the Court granted Defendant's motion and issued the writ.

The day *before* trial, Defendant sought permission to call a hearsay witness. Defendant did not say that he wanted to call Diaz-Flores. The defense argued that it wanted to call a new witness, Ms. Silvia Castro. Ms. Castro, it was explained, is a Spanish interpreter who was present when inmate Diaz-Flores made his statements during an unrecorded interview with counsel for the defense.[1] (Docket No. 53.) Defendant sought to admit the interpreter's testimony about inmate Diaz-Flores' *mea culpa* under the statements-against-interest exception to the hearsay rule. He asserted that inmate Diaz-Flores was an unavailable witness for purposes of the exception because Defendant anticipated that inmate Diaz-Flores would invoke his Fifth Amendment privilege against self-incrimination. The Diaz-Flores "evidence" was suspect and the corroborating evidence was thin.

Still before trial, the government opposed Defendant's motion on the grounds that the statements would not actually be against self-interest and that there was insufficient corroborating evidence. The government offered the interview notes Defendant's attorney made during his meeting with Diaz-Flores.[2] Those notes indicate that the interview occurred on May 13, 2016. Inmate Diaz-Flores discussed how he placed the packages in Defendant's car because he was forced. In his words, he was "forced, under duress. Wasn't a worker, wasn't w/ them [sic]." (Docket No. 55-1 at 3.) The government also produced transcripts of jail phone calls to demonstrate that Defendant and inmate Diaz-Flores "had a close enough relationship to share the same phone call and called the same number at separate times." (Docket No. 55 at 6; Exhibit 2.)

The Court made a tentative ruling that the interpreter's hearsay testimony would not be admissible. It was not a final ruling. *See e.g., United States v. McElmurry*, 776 F.3d 1061, 1072 (9th Cir. 2015) (Christen, J., dissenting) ("One thing is certain: before trial, the district court did not make a definitive Rule 403 determination with respect to

---

[1] Defendant indicates Diaz-Flores' own counsel was also present during the interview.
[2] The Court notes Defendant did not object to the admissibility or authenticity of the government's production of his attorney's interview notes.

any of the letters. At the motion in limine hearing, the court stated: '*My tentative ruling is . . . .*'") (Emphasis added). Once trial began, defense counsel did not again bring up the subject. He did not attempt to call inmate Diaz-Flores to the stand. He did not attempt to call Ms. Castro (the Spanish interpreter) to the stand. He did not offer his interview notes as evidence. And defense counsel did not make an offer of proof or request a final ruling on his motion before the jury began their deliberations.[3] On June 8, 2016, the jury found Defendant guilty of one count of Importation of Heroin, in violation of 21 U.S.C. §§ 952 and 960, and one count of Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. (Docket No. 61.) Defendant's sole post-verdict motion for mistrial on other grounds was denied.

## II. Legal Standard

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When reviewing a motion for new trial, a district court is not required to view the evidence in the light most favorable to the verdict, and may independently weigh the evidence and evaluate the credibility of the witnesses. *See United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *See United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (citation omitted)). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have

---

[3] The Court notes that both Defendant and the government indicate the Court had issued a final ruling on Defendant's motion to admit Ms. Castro's testimony before trial. (*See* Docket Nos. 78-1 at 2; 81 at 2). Once again, that is simply not correct. The Court did not issue a final ruling on Defendant's motion before the jury returned its verdict. Consequently, Defendant failed to preserve a claim of error. *See* Federal Rules of Evidence 103; *Pau v. Yosemite Park*, 928 F.2d 880, 888-89 (9th Cir. 1991) ("Our own review of the record reveals no clear holding of the trial judge on the admissibility of this evidence. This incomplete state of the record is due at least in part to the Paus' failure to make an offer of proof pursuant to Fed. R. Evid. 103(a). On these grounds we decline to review the trial court's exclusion of this evidence.").

occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Alston*, at 1211–12 (citing *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980)). However, a new trial should only be granted "in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (quoting 2 Wright, Federal Practice and Procedure, Criminal s 553 at 487 (1969)). The defendant bears the burden of demonstrating grounds for a new trial. *See United States v. Joelson*, 7 F.3d 174, 178 (9th Cir. 1993) (defendant had burden to show newly discovered evidence warranted a new trial). These standards are not met here.

### III. Discussion

Defendant's motion for new trial is premised on the claim that he has produced newly discovered evidence that raises serious questions about third-party culpability in his case. (Docket No. 78-1 at 1, 4.) Although it is not entirely clear from his motion, it also appears Defendant is seeking a new trial on due process grounds. The Court will address both arguments in turn.

**A.     Motion for New Trial Based on Newly Discovered Evidence**

To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, the movant must satisfy a five-part test:

> (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal.

*United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991) (citing *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir. 1986), *cert. denied*, 481 U.S. 1030 (1987)); *see also United States v. Brugnara*, __ F.3d __, 2017 U.S.App. LEXIS 8349*13 (9th Cir. May 11, 2017) (identifying the five-part test as the correct legal rule). Here, Defendant fails to satisfy parts (1), (2), and (5).

5

The Ninth Circuit "[has] long held that, in general, a defendant seeking a new trial on the basis of newly discovered evidence must show that "the evidence relied on is, in fact, newly discovered, *i.e.*, discovered after the trial." *United States v. McKinney*, 952 F.2d 333, 335 (9th Cir. 1991) (quoting *Pitts v. United States,* 263 F.2d 808, 810 (9th Cir.), *cert. denied,* 360 U.S. 919 (1959)). Put another way, "[e]vidence known or discovered before the trial is over is not newly discovered." *Id.* (citing *United States v. Eldred*, 588 F.2d 746 (9th Cir. 1978)); *see also United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (finding crime scene photographs and street maps were not "newly discovered evidence" to support Rule 33 motion for new trial because they could have been obtained any time before trial).

The government correctly points out that the only thing "new" about this evidence is the form in which it is presented – a letter supposedly written post-trial.[4] However, the new form of this old "evidence" does not qualify as the newly discovered evidence described by Rule 33. The *McKinney* case is instructive.

In *McKinney*, the defendant-appellant ("McKinney") was convicted of multiple counts of currency reporting violations. *Id.*, 952 F.2d at 334. During voir dire, the court asked whether any juror was involved with a tax protest group against the IRS, and none of the jurors responded affirmatively. *Id.* However, during the juror deliberations, the Assistant United States Attorney ("AUSA") informed the court and defense counsel that he had just learned that a juror's husband was a member of a tax protest group, and that the couple had not filed tax returns since 1983. *Id.* at 334-35. The juror's husband had also been observed outside the courtroom making anti-IRS and anti-government comments. *Id.* at 334. During the AUSA's disclosure, the court indicated that the jury had reached a verdict. *Id.* at 335. The court decided to receive the verdict, and advised both parties that they could make any appropriate motions afterward. *Id.*

---

[4] Although the letter is undated, Defendant without evidentiary support asserts it was written post-trial. (Docket 78-1 at 2.)

The jury convicted McKinney on all counts. *Id.* McKinney filed a notice of appeal, but did not raise the issue of juror misconduct. *Id.* McKinney's convictions were affirmed, but the trial court was ordered to resentence him. *Id.* at n. 2. Approximately eight months after McKinney's conviction, the court received two letters from the juror in question, wherein she stated that:

> the jury took the easy and safe way out; that someone who looked like the IRS agent who testified against McKinney came to her house in 1984, investigating local citizens, and that as a juror she became fearful that he may find reason to come again; and that she felt the jurors were influenced and manipulated by the IRS against an innocent man.

*Id.* at 335.

Two months later, McKinney filed a motion for new trial, attaching the two letters from the juror, and a declaration from a private investigator who had interviewed the juror and her husband. *Id.* The parties stipulated that the court could construe the statements in the investigator's declaration as the juror's testimony. *Id.* The court reviewed the juror's testimony that: "she had not filed tax returns since 1983, that she was aware of her husband's anti-IRS views and agreed with them," that her husband banked with a tax protest group, which an IRS agent had advised was being investigated in 1985, and that she had given money to an organization to finance an anti-IRS advertisement. *Id.* She stated she did not respond affirmatively to the court's voir dire inquiry because "she did not hold a grudge against the IRS, but did think it acted illegally," and only her husband was on the tax protest group's mailing list. *Id.* Additionally, she did not want to divulge the fact that she and her husband were involved in tax protest groups, "had not filed tax returns, and had been investigated by the IRS." *Id.*

The court denied McKinney's new trial motion on the grounds that the juror evidence was not new. *Id.* at 334. The Ninth Circuit affirmed, finding the court did not err in determining the juror's letters and the investigator's declaration did not amount to "newly discovered evidence." *Id.* at 336 ("The district court's conclusion that McKinney

7

had been apprised of the information about the juror since September 21, 1989 is well supported by a comparison of the evidence adduced through the letters and declaration with the disclosure before verdict."). Additionally, it stated that "[e]ven to the extent there are differences in degree and nuance, nothing in the record indicates diligence on McKinney's part." *Id.* (citing *Kulczyk*, *supra*, 931 F.2d at 548).

The facts in *McKinney* are analogous. Here, Defendant relies on a "newly discovered letter" he claims was written by inmate Diaz-Flores and addressed to this Court. (Docket No. 78-1 at 1-2.) Defendant asserts the letter "describes [Diaz-Flores'] 'wrongdoing for taking advantage of Mr. Caballero's trust' and the fact that [Diaz-Flores], in his own words, is 'guilty' and 'should be the one put on trial' instead of Mr. Caballero." (*Id.*) The letter, written in Spanish and translated into English, states:

> Letter for the Judge
>
> To whom is may concern very respectfully I Roberto Diaz Flores wish to acknowledge my wrongdoing for taking advantage of mr. Caballero's trust that day as was said when I washed his car and put some packages inside but it wasn't my intention to do harm but I was forced to do what I did I want to accept my wrongdoing and I want to help mr. Caballero and accept my blame because I am guilty I hope this may be enough to help mr. Caballero I should be the one put on trial Thank you [sic]

(Docket No. 78-2 at 2-3.) However, unlike the letter in *McKinney*, the Diaz-Flores letter was not sent directly to the Court. Instead, it was produced for the first time attached to Defendant's new trial motion. Notably, the letter is undated. It is neither notarized nor signed under penalty of perjury. The letter was not submitted with a declaration by inmate Diaz-Flores or any other person to verify its authenticity.

The Court finds that, although the form of the information is different, *i.e.*, Ms. Castro's proposed hearsay testimony about inmate Diaz-Flores' interview statements versus a letter allegedly penned by inmate Diaz-Flores, the "evidence" is the same. The

8

"evidence" is that eight months after the date of the offense, after some communication with Defendant in the jail, inmate Diaz-Flores announces to defense counsel that he was forced to put "some packages" inside Defendant's car without Defendant's knowledge. (*Compare* Docket Nos. 53, 55 with Docket No. 78.) Thus, even if the letter had been sent independently to the Court, it appears these same facts were known to the defense as early as May 13, 2016, over three weeks before the start of his trial. (Docket No. 55-1 at 3.) Therefore, Defendant failed to satisfy the first and second prongs of the five part test, namely production of newly discovered evidence and diligence. *McKinney*, 952 F.2d at 336 (citing *United States v. Eldred*, 588 F.2d 746, 753 (9th Cir. 1978) ("Evidence known or discovered before the trial is over is not newly discovered.")). Defendant also fails to satisfy the fifth prong. Under the klieg lights of cross-examination, the transparent attempt at shifting responsibility away from Defendant that would be apparent to a jury if this "evidence' were to be offered, would not likely lead to an acquittal. The Court need not address the remaining factors. Defendant's motion for new trial based on newly discovered evidence is denied.

**B.     Due Process**

As noted above, although Defendant's motion does not squarely address this argument, Defendant's brief suggests: (1) that his due process right to present relevant evidence was violated because the Court denied his pre-trial motion to admit Ms. Castro's hearsay testimony about the comments of inmate Diaz-Flores; and (2) that his due process right to present relevant evidence would be violated if Defendant is not able to present the Diaz-Flores letter to a jury in a new trial.[5] Not so.

---

[5] The government construed Defendant's motion as "a motion for reconsideration of this Court's prior ruling precluding the use of Diaz-Flores' statement." (Docket No. 81 at 5.) The Court finds that, because Defendant's trial has concluded, a motion for reconsideration of a motion to admit testimony at trial is moot.

### 1. **Defendant's Motion to Admit Ms. Castro's Testimony**

Defendant neither attempted to call Ms. Castro (the Spanish interpreter) as a witness during trial, nor requested the Court issue a final ruling on his motion to admit. After the Court denied Defendant's Rule 29 motion for judgment of acquittal, the motion to admit was ruled moot in the Court's minute order. (*See* Docket No. 57.) As a result, Defendant did not preserve this issue, and forfeited his right to raise it on appeal. *Puckett v. United States*, 556 U.S. 129, 134 (2009) (quoting *Yakus v. United States,* 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); FRE 103. The contemporaneous-objection rule was designed with this scenario in mind, that is, to "prevent[] a litigant from 'sandbagging' the court -- remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* (quoting *Wainwright v. Sykes,* 433 U.S. 72, 89 (1977) (internal quotation marks and citations omitted)).

Therefore, inasmuch as Defendant moves for a new trial on the grounds that the Court erred in excluding Ms. Castro's testimony, his motion is denied.

### 2. **Inadmissibility of Inmate Diaz-Flores' Letter in a New Trial**

Assuming, *arguendo*, that inmate Diaz-Flores' letter is newly discovered evidence, the Court must determine whether such evidence would be admissible in a new trial. It would not be admissible. It is not a genuine statement against interest and it is utterly unreliable. Moreover, it would do little to mitigate the overwhelming evidence against Defendant introduced at trial. Quite the opposite, the prosecution would have an easy time portraying it as some trick or game concocted by the Defendant and his criminal jail mate and perpetuated by his attorney. The defense was wise to leave it alone at trial, out of sight of the jury. A new trial where this Diaz-Flores story is introduced through hearsay would likely result in Defendant's second conviction by a skeptical jury.

In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court reiterated that a defendant's right to due process includes "the right to a fair opportunity to defend against the State's accusations." *Id.* at 294. While "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," the right is not limitless. *Id.* at 302 (citations omitted). "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and *reliability* in the ascertainment of guilt and innocence." *Id.* (emphasis added). State and federal lawmakers have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Phillips v. Herndon*, 730 F.3d 773, 775 (9th Cir. 2013) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

Thus, Defendant's contention that "[t]he right to present relevant evidence means that a defendant is entitled to present his version of the facts to a jury – even if the facts are disputed" is not entirely accurate. (Docket No. 78-1 at 4.) Indeed, the Ninth Circuit has specifically held that the exclusion of an *unreliable* third-party confession does not violate the due process clause. *See Herndon*, 730 at 775–76 (citing *Rhoades v. Henry*, 638 F.3d 1027, 1035-36 (9th Cir. 2010)). In short, a defendant's right to present relevant evidence to a jury may be limited by a judge's determination that the evidence lacks indicia of trustworthiness. *Id.*

Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or the Supreme Court provides an exception. Fed. R. Evid. 802. Rule 804(b)(3) provides in pertinent part:

> (b) The Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (3) Statement Against Interest. At statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when

>made, it was so contrary to the declarant's proprietary or
>pecuniary interest or had so great a tendency to invalidate the
>declarant's claim against someone else or to expose the
>declarant to civil or criminal liability; and
>
>(B) is supported by corroborating circumstances that clearly
>indicate its trustworthiness, if it is offered in a criminal case as
>one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).

"To get a statement against penal interest into evidence under 804(b)(3), the proponent must show that: (1) the declarant is unavailable as a witness; (2) the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true; and (3) corroborating circumstances *clearly indicate* the trustworthiness of the statement." *United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997) (emphasis added); *see also United States v. Satterfield*, 572 F.2d 687, 691 (9th Cir. 1978).

The parties agree that if inmate Diaz-Flores were to assert his Fifth Amendment privilege against self-incrimination, that would render him an unavailable witness for purposes of Rule 804(b)(3). The parties dispute whether Defendant has demonstrated the remaining two conditions for the Rule 804(b)(3) exception to the hearsay rule. The Court finds: (1) the letter contains hearsay statements that are not statements against penal interest, and (2) even if they are, there is insufficient corroborating evidence to demonstrate their trustworthiness.

### i. *Statement Against Penal Interest*

To qualify as a statement against interest under Rule 804(b)(3), the statement must be "truly self-inculpatory." *United States v. Gadson*, 763 F.3d 1189, 1199-1200 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2350 (2015) (quoting *Williamson v. United States*, 512 U.S. 594, 603–04 (1994) (internal quotation marks omitted). Because the Diaz-Flores letter disclaims liability by stating that Diaz-Flores was "forced," and because of Diaz-Flores' unwillingness to testify under oath or be subject to cross-examination, it is not

12

3:15-cr-02738-BEN-1

"truly self-inculpatory." A statement is "truly self-inculpatory" if it is "sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Ibid.* "Statements that curry favor or deflect (or share) blame do not fall within the scope of Rule 804(b)(3)(A)." *Gadson* at 1200 (quoting *Hernandez v. Small,* 282 F.3d 1132, 1141 n. 8 (9th Cir. 2002) (internal quotations marks omitted). "Whether a statement is in fact against interest must be determined from the circumstances of each case," *Paguio*, *supra*, 114 F.3d at 933 (quoting *Williamson,* 512 U.S. at 601), and "can only be determined by viewing it in context." *Id.* (quoting *Williamson* at 603).

In *Gadson*, the appellant-defendant was convicted of multiple narcotics and narcotics conspiracy-related charges. *Gadson*, *supra*, 763 F.3d at 1196. Evidence to support the government's case included the discovery of approximately $38,000 in cash in Gadson's garage, and testimony from another alleged co-conspirator that Gadson's brother, Brandon Haynes, gave him bags of money containing $40,000 to $50,000 in cash. *Id.* at 1197-99. While Gadson prepared for trial, he learned that Haynes made two statements to police that were helpful to him: 1) Haynes said he was the person who put the $38,000 in Gadson's garage; and 2) Haynes denied ever giving Gadson $40,000-$50,000. *Id.* at 1199. Additionally, Haynes told Gadson's co-defendant, Wilson, in a jail house conversation that "[y]ou and I both know [Gadson] should not be in it," possibly referring to the drug operation at another residence. *Id.*

Gadson subpoenaed Haynes to testify at his trial, but Haynes invoked his Fifth Amendment right not to testify. *Id.* At trial, Gadson moved to admit Haynes' statements under Rule 804(b)(3), but the trial judge denied the motion after finding Haynes had given inconsistent testimony and that the statement was not trustworthy. *Id.* On appeal, Gadson argued that the statements were admissible under Rule 804(b)(3), and their exclusion effectively denied him his right to present a complete defense. *Id.*

13

The Ninth Circuit determined that Haynes' statements that he had not given Gadson two bags of cash and that Gadson "should not be in it" were not self-inculpatory for purposes of Rule 804(b)(3) because they did not expose Haynes to any criminal liability. *Id.* at 1200 (citing *Hernandez v. Small*, 282 F.3d 1132, 1141 n. 8 (9th Cir. 2002) ("Statements that 'curry favor or deflect (or share) blame') do not fall within the scope of Rule 804(b)(3)(A).") With respect to Haynes' statement that he put the money in Gadson's garage, the court found that the statement may have been self-inculpatory, but the district court could nevertheless have reasonably concluded that it was not supported by corroborating circumstances indicating its trustworthiness. *Gadson* at 1200. In particular, it found the close family relationship between Haynes and Gadson supported an inference of untrustworthiness. *Id.* (citing *LaGrand v. Stewart*, 133 F.3d 1253, 1268 (9th Cir. 1998) ("In general, the exculpatory statements of family members 'are not considered to be highly reliable'").

In the present case, the statements in the Diaz-Flores letter are similar to the statements in *Gadson* in that they are primarily exculpatory of Defendant and are not truly self-inculpatory. *See Gadson* at 1200; *see also United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978) ("the declarant's statements must, in a real and tangible way, subject him to criminal liability."). Even if the Court assumes the letter is authentic, a reasonable person in Diaz-Flores' position would not believe the letter would subject him to any criminal liability. *See Paguio, supra*, 114 F.3d at 933 ("A reasonable person in the father's position would have believed that admitting to preparing false tax returns and engineering an admittedly fraudulent loan application would subject him to criminal liability.").

Although the letter states that inmate Diaz-Flores wants to acknowledge and accept his "wrongdoing" and that he is "guilty," the letter does not provide any information to indicate his criminal culpability. At most, he admits that he "put some packages" in Defendant's car, but he does not identify what the packages contain. Unless the person

14

admits to placing narcotics in Defendant's car, a reasonable person would not believe that admitting to placing "some packages" in another person's car would subject him to *criminal* liability. *See Paguio*, *supra*, 114 F.3d at 933. Moreover, inmate Diaz-Flores deflects his own culpability by stating "it wasn't my intention to do harm but I was forced to do what I did." This further undermines Defendant's contention that the statements are self-inculpatory. *See Hernandez*, *supra*, 282 F.3d at 1141 n. 8 ("Statements that 'curry favor or deflect (or share) blame') do not fall within the scope of Rule 804(b)(3)(A).").

In sum, the Court finds the statements in the newly produced Diaz-Flores letter would not qualify for the Rule 804(b)(3) exception to the hearsay rule because they are not statements against interest. However, even if the letter contained truly self-inculpatory statements against interest, Defendant did not present sufficient evidence to indicate the trustworthiness of the statements.

### ii. *Corroborating Evidence*

Under Rule 804(b)(3), "[t]he showing of corroborating circumstances must do more than tend to indicate the trustworthiness of the statements; they must clearly indicate it." *United States v. Ospina*, 739 F.2d 448, 452 (9th Cir. 1984); *see also Hoyos*, *supra*, 573 F.2d at 1115 ("Congress meant to preclude reception of exculpatory hearsay statements against penal interest unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration.") (citations omitted).

The Ninth Circuit considers the following factors in determining the trustworthiness of statements: "(a) the time of the declaration and the party to whom it was made; (b) the existence of corroborating evidence; (c) the extent to which the declaration is really against the declarant's penal interest; and (d) the availability of the declarant as a witness." *Hoyos*, 573 F.2d at 1115 (citing *United States v. Oropeza*, 564 F.2d 316, 325 (9th Cir. 1977)).

In *Ospina*, the defendant appealed his narcotics possession and related conspiracy convictions. *Id.*, *supra*, 739 F.2d at 449. He claimed the trial judge erred when he refused to admit Ospina's co-defendants' statements that the narcotics "belonged to them and to no one else." *Id.* at 451. The statements were made to a customs inspector after all three had been arrested and were left alone together in a detention room. *Id.* The Ninth Circuit found the trial court did not abuse its discretion when it refused to admit the co-defendants' statements because Ospina did not provide evidence that "clearly indicated" the statements' trustworthiness. *Id.* at 451-52.

Similarly, in *Hoyos*, the Ninth Circuit found the trial court properly exercised its discretion to exclude hearsay evidence because "'clear' collaboration was lacking." *Id.*, *supra*, 573 F.2d at 1115. The court based its decision upon determining that: (1) the offered testimony was "largely exculpatory" of Hoyos, but not significantly inculpatory to the declarant; (2) the statements were not spontaneous because they were made only after the declarant's arrest; (3) the statements were not spontaneous because they made to his wife, who could have raised the confidential marital communications privilege, and (4) there was "scant evidence of *independent* corroborating facts." *Id.* (emphasis added).

Here, the only evidence Defendant produced to corroborate the statements in the Diaz-Flores letter are his own self-serving statements to officers following his arrest. Thus, "the existence of corroborating evidence" factor weighs against him. *See Hoyos* at 1115. As discussed above, the Diaz-Flores letter contains statements that are primarily exculpatory for Defendant, but are not inculpatory as to inmate Diaz-Flores. This factor also weighs against Defendant. *See id.* Moreover, the defense relayed that inmate Diaz-Flores would invoke his Fifth Amendment privilege against self-incrimination, which results in this factor weighing against Defendant because the government would lose its ability to cross-examine him. *See Chambers v. Mississippi*, 410 U.S. 284, 298 (1973) ("Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that

16

impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.") (citation omitted).

Finally, the factor regarding the timing of the letter and the party to whom it was made also weighs against admission. As noted above, Defendant produced the letter to the Court long after trial with his new trial motion. (Docket No. 78.) Although Defendant asserts the letter was written post-trial, it is undated, and there is no declaration attesting to its authenticity. (Docket No. 78-2.) Additionally, the government produced evidence that inmate Diaz-Flores and Defendant shared a close relationship such that *while incarcerated* they shared a phone call and separately called the same phone numbers. *See Gadson*, *supra*, 763 F.3d at 1200 (finding a declarant's exculpatory statements are less reliable when he or she has a close relationship to the party seeking to benefit from the statements). Thus, Defendant also has not met the third requirement for the statement against interest exception.

Accordingly, Defendant's contention that due process requires he be granted a new trial to present the Diaz-Flores letter to a jury is meritless, and his motion for new trial on this ground is denied.

## IV. Conclusion

The Court finds that the Defendant has not demonstrated that the "newly discovered" evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred to warrant granting a new trial. Therefore, Defendant's motion for new trial is **DENIED**.

**IT IS SO ORDERED.**

**DATED: May 19, 2017**

_____
**Hon. Roger T. Benitez**
**United States District Judge**